## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Kunneman Properties, LLC, *et al.*, on behalf of themselves and all others similarly situated, <br><br>        Plaintiffs, <br><br> v. <br><br> Marathon Oil Company, <br><br>        Defendant. | Case No. 22-CV-274-KEW |

## PLAINTIFFS' UNOPPOSED MOTION TO CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES, TO PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT, TO APPROVE THE FORM AND MANNER OF NOTICE, AND TO SET A DATE FOR A FINAL FAIRNESS HEARING

Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
Bradford & Wilson PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

–and–

Rex A. Sharp, OBA #011990
Ryan C. Hudson, OBA #33104
Scott B. Goodger, OBA #34476
Sharp Law, LLP
5301 W. 75th Street
Prairie Village, KS 66208
Telephone: (913) 901-0505
Facsimile: (913)901-0419
rsharp@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities............................................................................................. ii

Introduction ........................................................................................................ 1

Summary of the Litigation ................................................................................. 2

Argument & Authority ....................................................................................... 4

    A. The Court Should Certify the Settlement Class for Settlement Purposes .................. 4

        1. Numerosity................................................................................. 6

        2. Commonality.............................................................................. 6

        3. Typicality .................................................................................. 8

        4. Adequacy of Representation...................................................... 8

        5. Predominance ............................................................................ 9

        6. Superiority................................................................................10

    B. The Court Should Grant Preliminary Approval of the Proposed Settlement............11

        1. Plaintiffs and Their Counsel Have Adequately Represented
           the Settlement Class.................................................................13

        2. The Proposed Settlement Was Negotiated at Arm's Length.........................14

        3. The Relief Provided for the Class Is Adequate,
           Taking into Account: ................................................................15

           i. The Costs, Risks, and Delay of Trial and Appeal ...................15

           ii. The Effectiveness of Any Proposed Method of
              Distributing Relief to the Class, Including the
              Method of Processing Class Members' Claims.......................17

           iii. The Terms of Any Proposed Award of Attorneys'
              Fees, Including Timing of Payment.......................................18

           iv. Any Agreement Required to be Identified under
              Rule 23(e)(3)........................................................................18

        4. The Settlement Treats Class Members Equitably Relative to
            Each Other ...............................................................................18

    C. The Court Should Preliminarily Approve the Proposed Notice
       of Settlement to the Settlement Class........................................................19

    D. Appointment of JND Legal Administration as Settlement
       Administrator is Proper.............................................................................21

    E. Appointment of Signature Bank as Escrow Agent Is Proper ....................21

Conclusion..........................................................................................................21

i

# TABLE OF AUTHORITIES

## Cases

*Amoco Prod. Co. v. Fed. Power Comm'n,*
    465 F.2d 1350 (10th Cir. 1972) .......................................................................11

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.,*
    275 F.R.D. 325 (D. Kan. 2011)........................................................................10

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.,*
    167 F. Supp. 2d 1216 (D. Colo. 2001) ...........................................................11

*Bollenbach v. Okla. Energy Acquisitions LP,*
    No. 17-CV-134-HE (W.D. Okla. 2018) .......................................................... 7

*Cecil v. BP Am. Prod. Co.,*
    No. 16-CV-410-KEW (E.D. Okla. 2018)............................................. 7, 9, 17

*CGC Holding Co., LLC v. Hutchens,*
    773 F.3d 1076 (10th Cir. 2014) ..................................................................... 9

*Cline v. Sunoco, Inc. (R&M),*
    333 F.R.D. 676 (E.D. Okla. 2019) ................................................................. 6

*D'Amato v. Deutsch Bank,*
    236 F.3d 78 (2d Cir. 2001) ...........................................................................15

*DG v. Devaughn,*
    594 F.3d 1188 (10th Cir. 2010) ............................................................. 5, 7–8

*Harris v. Chevron U.S.A., Inc.,*
    No.19-CV-355-SPS (E.D. Okla. 2019) ......................................................7, 9

*Horn v. Associated Wholesale Grocers, Inc.,*
    555 F.2d 270 (10th Cir. 1977) ....................................................................... 6

*In re Motor Fuel Temperature Sales Practices Litig.,*
    271 F.R.D. 263 (D. Kan. 2010)........................................................... 5, 11–12

*In re Telik, Inc. Sec. Litig.,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).............................................................15

*In re Urethane Antitrust Litig.,*
    768 F.3d 1245 (10th Cir. 2014) ..................................................................... 9

*Lucas v. Kmart Corp.,*
    234 F.R.D. 688 (D. Colo. 2006)................................................... 12, 16, 19

*Milonas v. Williams,*
    691 F.2d 931 (10th Cir.1982) ....................................................................... 7

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306, 314 (1950) ...............................................................................19

*Reed v. GM Corp.*,
  703 F.2d 170 (5th Cir. 1983) ..................................................................................14

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180, 1188–89 (10th Cir. 2002) .............................................................. 8

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
  749 F.2d 1451 (10th Cir. 1984) ...............................................................................11

*Swafford v. Ovintiv Inc., et al.*,
  No. 21-CV-210-SPS (E.D. Okla.) ......................................................................9, 17

*Tennille v. Western Union Co.*,
  785 F.3d 422 (10th Cir. 2015) ................................................................................. 4

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................... 6, 9–10

*Wilkerson v. Martin Marietta Corp.*,
  17 F.R.D. 273 (D. Colo. 1997) ...............................................................................15

## Rules

Fed. R. Civ. P. 23 ..................................................................................................*passim*

## Secondary Sources

Newberg et al., Newberg on Class Actions § 3:10 (5th ed. 2011)................................... 7

Manual for Complex Litigation § 13.14 (4th ed. 2004).............................................12

# INTRODUCTION

After over five years of sharply contested litigation, Plaintiffs have obtained an outstanding recovery for the Settlement Class. Specifically, Plaintiffs have reached a settlement with Defendant worth $35 million in cash for the Settlement Class to resolve natural gas royalty underpayment claims under Oklahoma law. Additionally, Plaintiffs have obtained substantial future benefits for the Settlement Class by obtaining an agreement from Defendant that it will cease taking certain deductions from royalty payments for a go-forward period of ten (10) years.

Having reached this agreement with Defendant and recovery for the Settlement Class, Plaintiffs now respectfully request that the Court preliminarily approve the Settlement. Specifically, through this Motion, Plaintiffs request that the Court:

    (1) certify the Settlement Class for settlement purposes;

    (2) preliminarily approve the Settlement;

    (3) appoint Plaintiffs as Class Representatives for the Settlement Class;

    (4) appoint Reagan E. Bradford and Ryan K. Wilson, of Bradford & Wilson PLLC, and Rex A. Sharp, of Sharp Law, LLP, as Co-Lead Class Counsel for the Settlement Class;

    (5) approve the form and manner of the proposed Notices;

    (6) appoint a Settlement Administrator;

    (7) appoint an Escrow Agent; and

    (8) set a hearing date for final approval of the Settlement and application for an award of Plaintiffs' Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award to Plaintiffs.[1]

---

[1] Unless otherwise defined herein, Plaintiffs incorporate by reference the defined terms contained in the Settlement Agreement. *See* **Ex. 1**.

Plaintiffs and Defendant have agreed to the form of the Preliminary Approval Order, which is Exhibit 1 to the attached Settlement Agreement (**Ex. 1**) and which Plaintiffs will submit to the Court contemporaneously with the filing of this motion.

## SUMMARY OF THE LITIGATION

This case has been fiercely litigated for five years, as reflected by the attached docket sheet from the Northern District of Oklahoma. *See* **Ex. 2**, N.D. Okla. Docket Sheet (spanning twenty pages and nearly 200 docket entries). Rather than closely detail each and every development—all of which are reflected on **Exhibit 2**—Plaintiffs provide a high-level summary of the major events in the litigation to date.

Plaintiffs initiated this case in on August 7, 2017, in the Northern District of Oklahoma, alleging that Defendant underpaid royalty under Oklahoma law by improperly deducting costs necessary to place natural gas in marketable condition. On September 11, 2017, Defendant filed a combined motion to dismiss or motion to transfer venue. On January 9, 2018, the Court denied Defendant's motion to transfer venue. The parties then began engaging in discovery, and Plaintiffs filed their First Motion to Compel on July 9, 2019, and the motion was fully briefed by August 27.

On September 24, 2019, the Court ruled on Defendant's motion to dismiss, which it granted in part and denied in part. On October 15, 2019, the Court largely granted Plaintiffs' motion to compel. On October 24, Plaintiffs moved to amend their complaint to add an additional putative class representative, and the Court granted the motion on October 29.

After continuing to litigate and engage in discovery, the parties agreed to mediate, each deciding to spend significant time and resources to narrow legal and accounting issues

to explore resolution.  The parties attended a day-long mediation in October 2020 with experienced mediator, Robert G. Gum. The mediation ultimately proved unsuccessful. Discovery continued, and Plaintiffs filed their Second Motion to Compel on November 10, 2020, which a magistrate judge granted in part and denied in part on December 8, 2020. Defendant objected to the magistrate judge's discovery ruling, which the Court denied on January 14, 2021.

The parties engaged in substantial discovery throughout the case, with Defendant producing hundreds of thousands of documents spanning thirty production volumes. Plaintiffs' Counsel took eight depositions, and Defendant's Counsel took four depositions. Further, Plaintiffs' Counsel conducted third-party subpoena discovery.

Plaintiffs moved for class certification on March 5, 2021, and their brief in support spanned thirty-one pages and was supported by twenty-five exhibits (with the exhibits spanning over 2,000 pages). Defendant filed its response in opposition to class certification on April 30, 2021, with its brief spanning forty-five pages and supported by thirty-three exhibits (with the exhibits spanning over 500 pages). Plaintiffs filed their reply in support of class certification on May 28, 2021, supported by fourteen exhibits, which spanned 1,400 pages. All in all, the class-certification record consisted of eighty-six pages of briefing and seventy-two exhibits (which spanned over 3,900 pages).

The Court held a day-long class-certification hearing on July 9, 2021, during which oral argument was presented and three live witnesses were examined and cross-examined. The parties had moved the Court to strike all other deadlines pending a ruling on class certification, which the Court ultimately issued on March 31, 2022. The Court denied Plaintiffs' motion based on purported discrepancies in Plaintiffs' proffered lease chart.

The parties revisited resolution following the Court's ruling on class certification and shared updated information to allow each side to adequately value their positions going forward. Plaintiffs' Counsel met in-person with Defendant's Counsel, providing them updated damages models and discussing potential next steps, including the possibility of filing a new putative class action. The parties scheduled and attended a day-long meeting in July of 2022 to explore resolution. That meeting resulted in the parties reaching an agreement in principle to settle the case, memorialized in a term sheet. The parties then worked to memorialize their agreement into a formal settlement agreement, which they ultimately executed on September 9, 2022. *See* **Ex. 1**.

The Settlement consists of a cash payment of $35 million as well as a go-forward agreement that delineates, for a period of ten (10) years, the costs that Defendant can and cannot deduct from the Settlement Class's royalty payments. Plaintiffs and their counsel submit that this agreement presents an outstanding recovery for the Settlement Class, both in terms of the upfront cash and the go-forward benefits and clarity.

## ARGUMENT & AUTHORITY

### A.    The Court Should Certify the Settlement Class for Settlement Purposes

In reviewing a proposed settlement for a putative class, the court determines whether the action may be maintained as a class action under Fed. R. Civ. P. 23. *See, e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422. 430 (10th Cir. 2015). Rule 23 examines four factors at class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Further, Rule 23(b) examines whether common questions predominate the dispute and whether the class action is superior to other methods.

District courts exercise "considerable discretion" in making class-certification deci-sions. *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit defers to a trial court's certification ruling "if it applies the proper Rule 23 standard and its 'decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand.'" *Id.* (citation omitted). In the settlement context, however, the court need not inquire as to trial manageability under Rule 23(b)(3)(D). *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Plaintiffs and Defendant have stipulated to: (1) the certification of the Settlement Class for settlement purposes; (2) the appointment of Plaintiffs as class representatives; and (3) the appointment of Reagan E. Bradford, Ryan K. Wilson, and Rex A. Sharp as Co-Lead Class Counsel for the Settlement Class. *See* **Ex. 1**, Settlement Agreement at 2–3. Accordingly, Plain-tiffs move the Court to certify a Settlement Class consisting of:

> All persons who own or owned minerals in the State of Oklahoma subject to an oil-and-gas lease from September 1, 2011, through and including March 31, 2022, under which (1) they received royalty on the sale and disposition of gas from Marathon from Oklahoma oil-and-gas wells; and (2) their royalty pay-ments were reduced for production volumes or production proceeds expended for marketing, gathering, compressing, dehydrating, treating, processing, trans-porting and fractionating natural gas liquids, or transporting of hydrocarbons produced from the unit.

> Excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America, including but not limited to the U.S. Department of the Interior (the United States, Indian tribes, and Indian allottees); (2) the State of Oklahoma or any of its agencies or departments that own royalty in-terests; (3) Defendant, its affiliates, predecessors, and employees, officers, and directors; (4) any publicly traded company or their affiliated entity that pro-duces, gathers, processes, or markets gas; (5) overriding royalty owners and oth-ers whose interest was carved out from the lessee's interest; (6) royalty owners who have already filed and still have pending lawsuits for underpayment of royalties against Defendant, including: Fortis Sooner Trend, LLC; Fortis Min-erals II, LLC; FMII STM, LLC; Sooner Trend Minerals, LLC; Phenom Min-erals, LLC; Christopher W. Didier; Kari J. Didier; August Grant Didier; Dixie

5

L. Didier Beth Ann Switzer; Kent L. Switzer; Gregory Vic Kirkpatrick; Milton Kent Kirkpatrick Revocable Trust; Emma Eugenia Kirkpatrick Family Trust; Jimmie Ice and Vicki Ice Trust; and Malcome Roy Oyler; and (7) royalty owners whose leases expressly authorize or expressly prohibit deductions under Oklahoma law.

*See id*. at 10–11. Certification of the Settlement Class for settlement purposes furthers the interests of Class Members and Defendant by allowing this case to be settled on a class-wide basis. The proposed Settlement Class satisfies the requirements of Rule 23, and thus this Court should certify the Settlement Class.

### 1. Numerosity

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (holding a class as small as 46 sufficient). Here, the Settlement Class consists of thousands of owners dispersed throughout Oklahoma and other states, making joinder of all Class Members impracticable. *See* Doc. 52 at 14; *see also Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) ("the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1)."). Plaintiffs have identified thousands of potential Class Members. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Numerosity is satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Of course, "'[f]actual

6

differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982). Plaintiffs need only show a single issue common to all members of the class. *See DG*, 594 F.3d at 1195; Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10, at 272-73 (5th ed. 2011).

Federal courts in Oklahoma have certified similar class actions many times, finding common issues existed for oil-and-gas royalty underpayment class claims. *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. CIV-16-410-KEW, Doc. 224 (E.D. Okla., Nov. 5, 2018) (preliminarily approving royalty underpayment class action for settlement purposes); *Bollenbach Enters., L.P. v. Okla. Energy Acquisitions, L.P., et al.*, No. 17-CV-134-HE, Doc. 41 (W.D. Okla. Dec. 7, 2017) (same); *Harris v. Chevron U.S.A., Inc., et al.*, No. 19-cv-355-SPS, Doc. 22 (E.D. Okla. Nov. 19, 2019) (same); *McKnight Realty Co. v. Bravo Arkoma, LLC, et al.*, Case No. CIV-17-308-KEW, Doc. 53 (E.D. Okla. Sept. 6, 2018) (same). Further still, federal courts in Oklahoma have certified these claims on a contested basis. *See, e.g., Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 770 (10th Cir. 2019).

Plaintiffs' underpayment claims involve common questions of law and fact, including whether the Class leases are subject to the implied duty to market under Oklahoma law, or otherwise prohibit deductions, and whether Defendant breached those duties by improperly deducting post-production costs. Again, the Tenth Circuit recently affirmed class certification of an oil-and-gas underpayment claim under Oklahoma law. *See Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 770 (10th Cir. 2019). Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. See **Ex. 1**, Settlement Agreement at 10.

### 3.  Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." But "'[e]very member of the class need not be in a situation identical to that of the named plaintiff'" to meet the typicality requirement. *DG*, 594 F.3d at 1195 (citation omitted). Rather, "[p]rovided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99.

Plaintiffs' claims are typical of the Settlement Class claims because Plaintiffs allege that they own royalty interests under leases subject to the implied duty to market and that Defendant breached that duty through improper deductions. Put differently, the same legal theories and issues of fact underlie the claims of the Settlement Class and Plaintiffs. So all Class Members who received improper deductions suffered the same injury arising out of similar facts. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Plaintiffs satisfy typicality.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to show they "will fairly and adequately protect the interests of the class." In the Tenth Circuit, the adequacy requirement is satisfied when (1) neither plaintiff nor its counsel has interests in conflict with the interests of other class members and (2) plaintiff will prosecute the action vigorously through qualified counsel. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188–89 (10th Cir. 2002). No conflicts exist between Plaintiffs or their counsel and other members of the Settlement Class. To the contrary, Plaintiffs share the same incentive as the Settlement Class to vigorously prosecute this case and obtain recovery.

Plaintiffs have done so, vigorously prosecuting this case through qualified counsel. Plaintiffs' Counsel are highly experienced in class actions, particularly class actions related to oil-and-gas payment claims under Oklahoma law. Plaintiffs' Counsel have been appointed as lead or co-lead counsel in multiple previous class actions, including numerous class actions in this Court.[2] Moreover, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Plaintiffs and their counsel satisfy typicality.

### 5. Predominance

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members." "'The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted); *see also, e.g.*, *CGC Holding Co., LLC v. Hutchens*, *773 F.3d 1076, 1087* (10th Cir. 2014) (same); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255

---

[2] *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. 16-CV-410-KEW (E.D. Okla. 2018); *Harris v. Chevron U.S.A., Inc.*, No.19-CV-355-SPS (E.D. Okla. 2019); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CIV-121-RAW (E.D. Okla. 2019); *Bollenbach v. Okla. Energy Acquisitions LP*, No. 17-CV-134-HE (W.D. Okla. 2018); *McKnight Realty Co. v. Bravo Arkoma*, No. 17-CV-308-KEW (E.D. Okla. 2018); *Speed v. JMA Energy Co., LLC*, No. CJ-2016-59 (Okla. Dist. Ct. Hughes Cty. 2019); *Henry Price Tr. v. Plains Mktg.*, No. 19-cv-390-KEW (E.D. Okla. 2021); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021); *Johnston v. Camino Nat. Res., LLC*, No. 19-CV-2742-CMA-SKC (D. Colo. 2021); *Swafford v. Ovintiv Inc., et al.*, No. 21-CV-210-SPS (E.D. Okla.); *Pauper Petroleum , LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ (N.D. Okla.); *Joanne Harris Deitrich Tr. A v. Enerfin Res. I Ltd. P'ship, et al.*, No. 20-CV-1199-F (E.D. Okla.); *Hay Creek Royalties, LLC v. Mewbourne Oil Co.*, No. 20-CV-084-KEW (W.D. Okla.); *Rounds, et al. v. FourPoint Energy, LLC*, No. 20-CV-52-P (W.D. Okla.); *McKnight Realty Co. v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla.).

(10th Cir. 2014) ("Classwide proof is not required for all issues. Instead, Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized questions."). Thus, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). Where, as here, Plaintiffs and the Settlement Class's claims stem from a "'common nucleus of operative facts,'" common issues predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

The Settlement Class satisfies predominance. The common questions of lease language and whether Defendant took improper deductions predominate over individual issues, as the Tenth Circuit recently affirmed in *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 770 (10th Cir. 2019). This alleged common conduct gave rise to each Class Member's claims, resulting in a sufficiently cohesive Settlement Class to warrant adjudication by representation. Because every Class Member's claims arise from Defendant's alleged systematic and uniform payment methodology, common questions predominate over any individual issues. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Plaintiffs satisfy predominance.

### 6. Superiority

Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In considering the superiority of a class action, courts consider:

10

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *Motor Fuel*, 271 F.R.D. at 269.

Superiority is easily satisfied here. Here, although liability may be substantial in the aggregate, the average owner's damages likely would not warrant the bringing of individual lawsuits. Nor are there any anticipated difficulties managing this case as a class action for settlement purposes only. For these reasons, these claims for royalty underpayment are uniquely well-situated for classwide resolution. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. This is a clear instance in which a class action is the superior method of fair and efficient adjudication.

## B.     The Court Should Grant Preliminary Approval of the Proposed Settlement

Courts strongly favor settlement as a method for resolving disputes. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true in large, complex class actions such as this one. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Rule 23(e) guides the Court to approve a class action settlement when Rule 23's requirements are met and when the settlement is fair to the class members. Proposed class action

settlements follow a two-step process. *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see also* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). **First**, the Court conducts preliminary analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). **Second**, after the Court preliminarily approves the settlement, the class is provided notice and an opportunity to be heard at a final fairness hearing, at which point the Court considers whether the settlement should be finally approved. *See In re Motor Fuel*, 258 F.R.D. at 675.

In this Motion, Plaintiffs are asking the Court to undertake that first step. "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel*, 258 F.R.D. at 675 (internal quotations omitted). While "[t]he standards for preliminary approval are not as stringent as those applied for final approval," courts frequently refer to the final approval factors to determine whether a proposed settlement should be preliminarily approved. *Id.* at 675–76.

Fortunately, Rule 23 provides clear factors for the Court to review at this first step. Specifically, the Court should consider:

> (A) the class representative and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed Settlement checks each of these boxes.

### 1. Plaintiffs and Their Counsel Have Adequately Represented the Settlement Class

Under this factor, the Court should consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory committee notes, 2018. Frankly, the Docket Sheet at **Exhibit 2** plainly demonstrates the sheer amount of work that Plaintiffs and their counsel have undertaken in this case. Plaintiffs' Counsel have engaged in substantial discovery efforts with Defendant throughout the Litigation. Plaintiffs' Counsel have obtained, reviewed, and analyzed voluminous data, including check stubs, leases, pay detail, accounting information for Oklahoma owners, and voluminous ESI productions, including email. Plaintiffs' Counsel also deposed eight witnesses and obtained two orders compelling production of discovery. Further, Plaintiffs and their counsel have engaged experts to review the information produced by Defendant so that the parties could appropriately consider the possibility of resolution. For years, counsel for Plaintiffs worked with experts in an effort to fully understand the accounting data provided by Defendant and develop a damages model. This included frequent meetings, communications, and exchanges of additional data and material between the parties and their experts.

Further, as discussed *supra*, Plaintiffs' Counsel has served as counsel in several prior class action settlements involving the exact deduction claims at issue in this case. And Plaintiffs' Counsel is involved in several other currently pending putative class actions for the exact deduction claims at issue in this case. All of that is to say the efforts of Plaintiffs' Counsel in other cases have resulted in a collection of significant information laying the groundwork for the favorable Settlement reached in this case. The Settlement reached in this case with Defendant is on par with the values reached in similar oil-and-gas class actions. Finally, Plaintiffs have remained actively involved in this litigation since filing and has thus adequately represented the Settlement Class.

### 2. The Proposed Settlement Was Negotiated at Arm's Length

"[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Here, prior to reaching the Settlement, Plaintiffs' Counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with experts. The Settlement is the product of arm's-length negotiations between Plaintiffs and Defendant and their experienced counsel at a point when Plaintiffs and Defendant possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases.

Further, prior to reaching the Settlement, the parties went through a strenuous and work-intensive mediation process: "The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and

14

weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 17 F.R.D. 273, 285 (D. Colo. 1997). An experienced mediator's involvement "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); see also *D'Amato v. Deutsch Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Here, the parties engaged Robert G. Gum, an experienced oil-and-gas attorney with significant experience serving in oil-and-gas class actions like this one. Although the Settlement wasn't reached at the mediation, that mediation process ultimately provided the necessary investigation, analysis, and framework to ultimately reach the Settlement following the Court's ruling on class certification. At that point, the parties shared updated data and then engaged in a day-long discussion concerning resolution. Should the Court grant preliminary approval of this case, Plaintiffs intend to obtain an affidavit from Mr. Gum as to his opinion on the fairness of this Settlement, given his extensive work as a neutral in this case and others involving the same claims.

The Settlement reached in this case is the product of mutual, zealous advocacy, taking into the account the relative strength and weakness of each side's case. The second factor supports preliminary approval.

### 3. The Relief Provided for the Class Is Adequate, Taking into Account:

#### (i)    *The Costs, Risks, and Delay of Trial and Appeal*

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated."

*Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted). As strongly as both sides feel about the merits of their stance, each side here recognizes serious questions of law and fact exist in this case.

Though the parties were able to ultimately agree to a settlement amount, they still vehemently disagree on numerous factual and legal issues. Defendant denies all wrongdoing. *See* **Ex. 1**, Settlement Agreement at 3. Defendant has entered into this Settlement solely to eliminate the burden, expense, and distraction of further litigation. *See id.* Plaintiffs are optimistic about their chances of success at trial on their individual cases and their appellate chances on the class-certification decision, but they recognize there are significant obstacles they would still have to overcome to achieve success on behalf of the Settlement Class. Put simply, serious questions of law and fact are still in dispute. Importantly, the meaningful Settlement renders the resolution of these questions unnecessary and provides a guaranteed recovery in the face of uncertainty.

What's more, as opposed to a pure cash payment at settlement with no future clarity on the disputed issues, the Settlement avoids potential future class litigation for a period of ten years by clearly delineating an agreement between the Settlement Class and Defendant as to what deductions can and cannot be taken during the go-forward period. As this Court is well aware, these substantive questions about the propriety of certain deductions under Oklahoma law are always fiercely contested. The go-forward agreement here helps avoid, for a ten-year period, further litigation between the Settlement Class and Defendant on these contested issues, providing clarity to both the Settlement Class and Defendant. Similar go-forward agreements as to royalty deductions under Oklahoma law have previously been approved by both Oklahoma state and federal courts. *See, e.g.*, *Strack, et al. v. Continental Res.*,

*Inc.*, No. CJ-10-75 (Okla. Dist. Ct. Blaine Cty.); *Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R (W.D. Okla.).

> **(ii)**   ***The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Members' Claims***

The proposed distribution method for this common-fund Settlement will be highly effective. Pursuant to the Settlement Agreement, Defendant will provide Plaintiffs' Counsel its payment history data for payments made by Defendant for wells located in Oklahoma, including the names, last known addresses, and tax identification numbers of persons or entities receiving those payments. *See* **Ex. 1**, Settlement Agreement at 14. The Settlement Administrator will make reasonable efforts to: (a) verify the last-known address of potential Class Members provided by Defendant and (b) locate current addresses of any potential Class Members for whom Defendant has not provided addresses. *Id.*

Subject to the Court's approval, Plaintiffs' Counsel will allocate the Net Settlement Fund to individual Class Members who are participating in the Settlement considering numerous factors that are regularly used to allocate class settlements of this nature. *See* **Ex. 1**, Settlement Agreement at 21. The Net Settlement Fund will then be distributed by the Settlement Administrator as soon as reasonably possible after final approval has been obtained for the Settlement. The Settlement Agreement specifies deadlines for distributing the Net Settlement Fund. *See* **Ex. 1**, Settlement Agreement at 24. Plaintiffs' Counsel has had this distribution method approved and utilized in other deduction class-action settlements. *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. CIV-16-410-KEW (E.D. Okla. 2018); *see also Swafford v. Ovintiv, Inc., et al.*, No. 21-CV-210-SPS (E.D. Okla. 2021).

Importantly, as opposed to many other court-approved class action settlements in federal court, the Settlement Agreement doesn't require Class Members to submit claim forms

in order to receive their share of the Net Settlement Fund. On the contrary, all Class Members who don't affirmatively opt-out of the Settlement will automatically receive a check without the burden of submitting a claim form. *See* **Ex. 1**, Settlement Agreement at 24.

> ### (iii)    The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment

Under the terms of the Settlement Agreement, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees no later than twenty-eight days before the Final Approval Hearing. *See* **Ex. 1**, Settlement Agreement at 15. Plaintiffs' Counsel anticipate that they will seek a fee award of no more than forty percent of the Gross Settlement Fund. Plaintiffs' Counsel have obtained an excellent recovery for Class Members in the form of a $35 million cash payment. Under the Settlement Agreement, Plaintiffs' Attorneys' Fees are to be paid to Plaintiffs' Counsel from the Gross Settlement Fund, to the extent practicable through reasonably diligent efforts by the Escrow Agent, one day following the date the Judgment becomes Final and Non-Appealable. *See* **Ex. 1**, Settlement Agreement at 29.

> ### (iv)    Any Agreement Required to be Identified under Rule 23(e)(3)

The parties have entered into the Settlement Agreement, which is submitted in full at **Ex. 1**.

### 4.  The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement treats Class Members equitably relative to each other. All Class Members identified will receive their proportionate share of the Net Settlement Fund based on numerous factors that are regularly used, and approved by federal courts in Oklahoma, to allocate class settlements of this nature. **Ex. 1**, Settlement Agreement at 23.

Because all four factors weigh in favor of the Settlement here, Plaintiffs respectfully request the Court grant preliminary approval of the Settlement.

**C.**   **The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Class**

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Additionally, Rule 23(e)(1)(B) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted).

Plaintiffs have submitted to the Court for approval the Notice of Settlement, which includes a postcard notice, a notice for publication on the settlement website, and a summary notice that will be published in various newspapers. The Notice of Settlement documents are attached to the Settlement Agreement as Exhibits 3–5. As set forth in the Settlement Agreement, Plaintiffs and Defendant have agreed that, no later than thirty (30) days after entry of the Preliminary Approval Order, or at such time as is ordered by the Court, the Court-appointed Settlement Administrator shall begin disseminating the Notice by sending a copy of the postcard Notice (Settlement Agreement, Exhibit 3) via first-class mail to the last known mailing address of each Class Member who can be identified with reasonable effort to do so and also post the Notice (Settlement Agreement, Exhibit 4) on an Internet website dedicated to the Settlement. **Ex. 1**, Settlement Agreement at 14–15. Plaintiffs and Defendant further agreed that the Settlement Administrator also shall publish (or cause to be published) the Notice (Settlement Agreement, Exhibit 5) one time in each of the following newspapers: (a) *The*

19

*Oklahoman*, a paper of general circulation in Oklahoma; and (b) *The Tulsa World*, a paper of general circulation in Oklahoma. After mailing the postcard Notice of Settlement and continuing through the date of the Final Fairness Hearing, the Settlement Administrator also will display (or cause to be displayed) on an Internet website dedicated to this Settlement the following documents: (a) the Notice of Settlement; (b) the Complaint; (c) this Settlement Agreement; (d) the Preliminary Approval Order; and (e) other publicly filed documents related to the Settlement. *Id.* at 15. The Notices direct Class Members to this website for additional information. And, of course, these documents will also be available on the Court's docket.

In accordance with Rule 23(c)(2)(B), the proposed Notice will fully inform Class Members about the Litigation, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. Specifically, the Notices clearly describe: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) Plaintiffs' Counsel's intent to request attorneys' fees, reimbursement of expenses, and case contribution awards; (iv) the procedure and timing for objecting to the Settlement; (v) the procedure and timing for requesting exclusion; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Class Members with a toll-free number and email address for Settlement-related inquiries and a URL address for the dedicated Settlement website where Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them an opportunity to opt out or to object. As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due

process. The Court should approve the Notices and the manner through which they will be delivered and communicated to the Settlement Class.

### D.    Appointment of JND Legal Administration as Settlement Administrator Is Proper

To transmit the Notices and accomplish the processing of requests for exclusion and the distribution of the Net Settlement Fund in accordance with a Court-approved plan of allocation and distribution, Plaintiffs respectfully request the Court appoint JND Legal Administration ("JND") as the Settlement Administrator. JND is a leading class action administration company that has handled many complex class action settlements.[3] Further, under the terms of the Settlement Agreement, Plaintiffs, Defendant, and their Counsel will work directly with the Settlement Administrator for much of the notice, administration, and distribution processes. Accordingly, Plaintiffs respectfully request that the Court appoint JND as the Settlement Administrator.

### E.  Appointment of Signature Bank as Escrow Agent Is Proper

Additionally, Plaintiffs respectfully request that the Court appoint Signature Bank as the Escrow Agent. Pursuant to the terms of the Settlement Agreement, the parties mutually agreed upon Signature Bank to carry out the duties assigned to the Escrow Agent. **Ex. 1**, Settlement Agreement at 5.

### CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court enter the agreed proposed Preliminary Approval Order, attached as **Exhibit 1** to the Settlement Agreement (**Ex. 1** hereto), which will: (1) certify the Settlement Class for Settlement purposes; (2) preliminarily

---

[3]  More information about JND can be found on its website at: www.jndla.com

approve the Settlement; (3) appoint Plaintiffs as Class Representatives for the Settlement Class; (4) appoint Reagan E. Bradford, Ryan K. Wilson, and Rex A. Sharp as Co-Lead Class Counsel for the Settlement Class; (5) approve the form and manner of the proposed Notice; (6) appoint JND Legal Administration as Settlement Administrator; (7) appoint Signature Bank as Escrow Agent; and (8) set a hearing date for final approval of the Settlement and application for an award of Plaintiffs' Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award to Plaintiffs.

Respectfully Submitted,

*/s/Reagan E. Bradford*
Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
(405) 698-2770
(405) 234-5506 (fax)
reagan@bradwil.com
ryan@bradwil.com

*–and–*

Rex A. Sharp, OBA #011990
Ryan C. Hudson, OBA #33104
Scott B. Goodger, OBA #34476
SHARP LAW, LLP
5301 W. 75th Street
Prairie Village, KS 66208
Telephone: (913) 901-0505
Facsimile: (913)901-0419
rsharp@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*/s/Reagan E. Bradford*
Reagan E. Bradford